IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:24-cr-00337-AMN |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **GOVERNMENT'S SENTENCING** |
| **DEVON NEWSOME, a.k.a. "Nepp",** | ) | **MEMORANDUM** |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

At his sentencing, currently scheduled for January 6, 2025, the United States requests that the Court sentence the defendant, Devon Newsome, according to the Sentencing Guidelines and recommends a sentence of 60 months of imprisonment, followed by 3 years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing factors in 18 U.S.C. § 3553(a).

I. **INTRODUCTION AND FACTUAL BACKGROUND**

The defendant has pled guilty, pursuant to a plea agreement, to a violation of Title 18, United States Code, Sections 922(a)(5) and 924(a)(1)(D), for the Transfer of Firearms to an Out-of-State Resident. Dkt. 26 (Information); Dkt. 28 (Plea).

The United States does not have any objections to the facts contained in the final disclosure of Presentence Investigation Report, dated December 12, 2024, prepared by the U.S. Probation Office, which relied on law enforcement reports and related discovery provided by the United States. Dkt. 31 ("PSIR").

In pleading guilty, the defendant admitted that in May 2023, he transferred 29 firearms to a New York resident, which were transported to a house on Western Avenue in Albany, New York. PSIR ¶ 2. Among others, the defendant transferred a Glock pistol that was equipped with a

1

machinegun conversion device that converted the pistol into a machinegun. PSIR ¶¶ 2, 21. Law enforcement recovered the firearms when searching the premises on Western Avenue on May 23, 2023, where they also found significant quantities of drugs. PSIR ¶¶ 13-14.

The defendant was arrested on December 13, 2023, and has been released on a $10,000 unsecured bond since. PSIR ¶ 6.

## II. GUIDELINES PROVISIONS

### i. Criminal History Category

The United States agrees with Probation that the defendant has a criminal history score of six, with two prior felony convictions, which establishes a criminal history category of III. PSIR ¶¶ 45-46, 49.

### ii. Offense Level Computation

The United States agrees with Probation that the total offense level is 25. PSIR ¶¶ 30-40. The base offense level is 20 because the offense involves a machinegun (a type of firearm described in Title 26), and the defendant was a prohibited person at the time of the offense. PSIR ¶ 30. Two specific offense characteristics apply: because the offense involved 29 firearms, the offense level increases by 6 levels, and because the offense involved stolen firearms, the offense level increases by 2. PSIR ¶¶ 31-32. The defendant is entitled to a two-level downward adjustment for acceptance of responsibility, and to an additional one-level downward adjustment for timely notifying authorities of his intention to enter a plea of guilty. PSIR ¶¶ 38-39. After application of all the adjustments noted above, the total offense level is 25. PSIR ¶ 40.

  b. **Guidelines Calculations**

*Imprisonment.* Based upon a total offense level of 25, and a criminal history category of III, the guideline imprisonment range is 70 to 87 months, but the statutory maximum sentence is 5 years (60 months) so that becomes the guideline term of imprisonment. PSIR ¶ 69.

*Supervised Release.* The Guidelines recommend a term of supervised release of one to three years. *See* PSIR ¶ 73; U.S.S.G. § 5D1.2.

*Fines.* The Guideline fine range is $20,000 to $200,000. PSIR ¶ 78; U.S.S.G. §5E1.2(c)(3).

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

The United States requests that the Court sentence the defendant according to the Sentencing Guidelines and recommends that the Court sentence the defendant to 60 months of imprisonment, followed by three years of supervised release. A mandatory special assessment of $100 must also be imposed. Given the defendant's apparent an inability to pay a fine, *see* PSIR ¶ 67, the United States does not recommend that a fine be imposed.

  A. **The Nature, Circumstances, and Seriousness of the Offense**

The requested sentence should be imposed to reflect the nature and seriousness of the defendant's crime involving trafficking of numerous firearms, including a machinegun, to a drug-trafficker and prohibited person in the Northern District of New York, all while the defendant was a prohibited person.

The seriousness of the defendant's conduct is highlighted by his possession of an assortment of 29 firearms that included a pistol equipped with a conversion device that allowed it function as a machinegun. The "damage a machinegun can inflict is enormous." *United States v. Hixson*, 624 F. Supp. 3d 930, 940 (N.D. Ill. 2022) ("The dangerousness manifests itself not only in the sheer number of bullets that can be emptied from the magazine in the blink of an eye but

also in the resulting lack of control of the firearm when discharging it"). Public videos illustrate the comparative dangers of firing a regular pistol with one equipped with a conversion device that allows it to function as a machinegun. *See, e.g.,* AL.com, *Glock switch demonstration*, YouTube (Dec. 15, 2023), https://youtu.be/e6WENx_42WQ?si=JieMDNbsAPKFbqs5.

The defendant was not only prohibited at the time of the offense, with two prior drug convictions, but also transferred *stolen* firearms that he had stockpiled over time for the explicit purpose of selling to out-of-state residents to make money. PSIR ¶ 28 (noting that the defendant "did not want to sell the firearms around where he lived in the Atlanta metro area because he thought he would not have made as much money").

Indeed, the defendant supplied firearms to not just any out-of-state resident; he supplied known drug-traffickers and prohibited persons with deadly weapons. Anthony Zaremski and Jabree Jones, both of whom were prohibited with previous drug and firearms-related felonies, were found not only with the firearms that the defendant supplied them, but also with significant quantities of methamphetamine, fentanyl, and cocaine. PSIR ¶¶ 11-14. Though the defendant is not charged with any drug offense here, the defendant transferred 29 firearms to those drug traffickers, which Jones and Zaremski (and others) received, possessed, and used in furtherance of those drug trafficking activities, and intended to sell to others as part of the illegal firearms trafficking market. The significant dangers posed by the defendant's conduct is highlighted by the fact that one of those drug traffickers—Zaremski—died shooting at officers when his premises was searched on May 23, 2023. PSIR ¶ 12. The defendant played a central role in putting dangerous weapons in the hands of the very individuals who should not have them.

The defendant should be sentenced based on his serious offense conduct, which significantly impacted gun violence in our community and around the United States.

### B. The History and Characteristics of the Defendant

The defendant is not a first-time offender; he has two prior felony drug offenses, as well as multiple prior arrests for other drug crimes, including a pending drug trafficking charge in Georgia. PSIR ¶¶ 49-56. His prior felonies, which are incorporated into his criminal history category, suggest that he has a significant risk of recidivism and poses a danger to society once released.

The defendant also has a history of using alcohol and marijuana. PSIR ¶ 62. His history of substance abuse could lead to irrational and impulsive decision-making, and contribute to his recidivism risk, and merits special conditions for any term supervision imposed, including the special conditions recommended by Probation. *See* PSIR at 27-28.

### C. Respect for the Law, Just Punishment, and Deterrence

A Guideline term of imprisonment will also promote respect for the law, provide just punishment, and further both specific deterrence to the defendant and general deterrence to others. 18 U.S.C. § 3553(a)(2). The requested sentence will serve as a general deterrent to those who unlawfully possess firearms and engaged in the illegal firearms trade and will serve as a specific deterrent to protect the public from the future crimes this defendant could commit.

A Guideline prison sentence also reflects the appropriate sentencing range established by the Sentencing Guidelines and avoids unwarranted sentencing disparities among defendants. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-Guidelines

sentences promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Those Guidelines have been used and deemed reasonable by other federal courts, including in the Northern District of New York, in sentencing other defendants for similar firearms offenses. *See, e.g.*, *United States v. Patterson*, 1:23-cr-00062-BKS (June 21, 2024, N.D.N.Y.), ECF No. 49 (sentencing defendant to the maximum 60 months in prison for engaging in the firearms business without a license and shipping firearms to New York). Likewise, this Court should avoid any sentencing disparities and should sentence the defendant according to the Guidelines here.

## IV. CONCLUSION

Given the nature and characteristics of this offense involving the transfer of 29 firearms, including stolen firearms and a machinegun, by a prohibited person, to other prohibited persons for their possession and use in a significant drug trafficking conspiracy, the United States requests that the Court sentence the defendant according to the Sentencing Guidelines and recommends that the Court impose a sentence that includes a term of imprisonment of 60 months followed by three years of supervised release.

## V. RESERVATION OF RIGHTS

The United States reserves the right to respond to defense arguments raised for the first time after filing this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the Sentencing Guidelines for grounds not identified by the parties or in the PSIR, the government requests notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States also requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, except for the confidential sentencing recommendations submitted by the United States Probation Office.

Dated: December 16, 2024                             Respectfully submitted,

                                                  CARLA B. FREEDMAN
                                                  United States Attorney

By:      */s/ Alexander P. Wentworth-Ping*
        Alexander P. Wentworth-Ping
        Assistant United States Attorney
        Bar Roll No. 701897